Commonwealth *v.* Erb et al., Appellants.

Argued September 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James M. Potter,* with him *John A. Boccabella,* and *Liever, Hyman & Potter,* for appellants.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., December 11, 1974:

Appellants Dean Erb and Diane Ruth were indicted for simple possession, and possession with intent to deliver, a controlled substance—marijuana. After a hearing court denied appellants' motions to suppress the seized contraband and other tangible incriminating evidence, a jury returned verdicts of guilty of simple possession, but not guilty of possession with intent to deliver. Post trial motions were argued and denied, and appellants were sentenced as follows: Mr. Erb was ordered to pay a fine of $500.00 and the costs of prosecution, and sentenced to serve not less than four months nor more than twelve months in the Berks County Prison; Miss Ruth was ordered to pay the same fine and costs, and was sentenced to serve not less than thirty days nor more than twelve months in the same institution. Both appellants now argue that the lower court erred in refusing to suppress particular physical evidence because the State Police improperly executed the search warrant.[1]

---

[1] Appellants also claim that the affidavit accompanying the warrant failed to establish probable cause for the search because most of the information was stale, and was provided by confidential

The testimony produced at the suppression hearing was unrebutted by the appellants, although one officer's credibility was diminished by prior inconsistent statements. Pursuant to the magistrate's issuance of a search warrant, State Police Officers McFarland and Kaunert arrived at Miss Ruth's apartment on June 30, 1972, at approximately 12:25 A.M. As they approached the apartment, the officers noticed that a light was on inside. The policemen then entered the apartment building and knocked loudly on Miss Ruth's door. Two or three minutes elapsed before there was a response from within—a female voice saying, "Who is it?" The troopers announced their identity and stated that they had a search warrant for the premises. Five or ten seconds passed until the voice replied, "Wait a minute." One of the officers then demanded that the door be opened immediately. Once again Miss Ruth replied, "Wait a minute." After five or ten seconds more, Trooper Kaunert told Trooper McFarland that he heard "movement and muffled voices," although no one seemed to be approaching the door. At that point Trooper Kaunert broke a pane of glass, and reached in to unlock the door so that both troopers could enter. Miss Ruth was standing in the darkened kitchen area of the apartment, and Mr. Erb entered from the illuminated livingroom-bedroom area. Both were in nightclothes. The troopers then conducted a search and found various plastic bags containing marijuana. They also seized other containers, including a canvas bag, in which they found marijuana residue.

The appellants contend that the execution of the warrant was illegal because the troopers forcibly entered the apartment without giving the appellants a

informants who failed to meet the standards established in *Aguilar v. Texas*, 378 U.S. 108 (1964). This contention is completely frivolous and will not be discussed herein.

sufficient opportunity to admit them voluntarily, and without any reasonable basis for determining that exigent circumstances existed justifying the use of such force. With this contention we disagree.

In support of their argument appellants chiefly rely upon two decisions of our Supreme Court, *Commonwealth v. DeMichel*, 442 Pa. 553 (1971) ; and *Commonwealth v. Newman*, 429 Pa. 441 (1968), in which evidence was found to have been improperly admitted at trial because the police officers, in executing search warrants had not given the occupants of the premises a sufficient opportunity to submit voluntarily to that intrusion upon their privacy. We, of course, wholly agree with the principle for which those cases stand; however, we find that the troopers in the instant case acted reasonably in using force to enter the premises. This conclusion is strengthened when the facts of *Commonwealth v. Newman* and *Commonwealth v. DeMichel* are compared to those in the instant case.

In *Commonwealth v. Newman,* police arrived at the suspect's apartment, banged loudly on the door and announced that they were the police. After twenty seconds passed without a response from within, the police broke down the door with a sledge hammer. In that case, however, the police never declared their purpose, and failed to demonstrate any basis for believing that exigent circumstances existed, aside from the fact that lottery paraphernalia which was the object of the search in that case *may be* easily destroyed.

In *Commonwealth v. DeMichel,* supra, the facts are more similar to those now before us. Nevertheless, they are readily, and we find fatally for appellants, distinguishable from those in the instant case. In *DeMichel,* the appellant was found guilty of maintaining an illegal lottery, based upon evidence found pursuant to a search of his premises. Therein the Supreme Court, in grant-

ing appellant's motion for a new trial, stated: "Corporal Hall and Officer Creden testified that they and the other officers began to break down the front door of appellant's house five to fifteen seconds after announcing their presence and purpose. We cannot deem this a reasonably sufficient period of time." *Id.* at 561. However, even *DeMichel,* in which the evidence lacked several of the important facts present in the instant case, evidence that heightened the trooper's suspicions concerning the possible destruction of evidence, produced a badly divided court on the question of whether the circumstances justified the use of force.[2] In this instant case, we have a series of lapses of time during which several conversations, albeit brief, took place between the occupants of the apartment and the police. These lapses in time, combined with the shuffling sounds and muffled voices, indicated to the police that delaying tactics were being employed by the occupants, a conclusion not unreasonable under the circumstances. As this court has previously stated in upholding the admissibility of evidence produced by a forcible entry: "The cases which have held the police justified in their belief that evidence is being destroyed have involved narcotics or gambling implements which are easily destroyed. The police in this case were searching for narcotics, and, therefore, had reason to fear that the evidence would be destroyed. . . . They were, therefore, justified in breaking into the house." *Commonwealth v. Pugh,* 223 Pa. Superior Ct. 112, 116 (1972). While the law jealously guards individuals' rights to privacy

---

[2] The opinion of the Court, which was authored by Justice ROBERTS was joined only by Justice O'BRIEN. Justice EAGEN concurred in the result, thus producing a majority for reversal since neither Justices COHEN nor BELL participated in the decision of that case. Justice POMEROY penned a dissent with which Justice EAGEN joined.

from intrusion by the government, even to the point of sanctioning an individual's "Hobson's choice" of voluntarily allowing the police to search, this right to privacy must accede to the interests of criminal law enforcement when the police have a reasonable basis for believing that an individual is using this opportunity to illegally destroy evidence. *Ker v. California,* 374 U.S. 23 (1963). In the instant case, the facts and circumstances known to the police at the time of the search justified their use of force.

Judgment of sentence is affirmed.